IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

ANDREW CHIEN,                        )
   *pro se* Plaintiff,              )
                                 )
      v.                           )      Civil No. 3:18-cv-106 (MHL)
                                 )
DIANA GRIBBON MOTZ, *et al.*,        )
   Defendants.                      )

## REPORT AND RECOMMENDATION

Plaintiff Andrew Chien ("Plaintiff"), proceeding *pro se*, brings this action against Defendants United States Court of Appeals for the Fourth Circuit Judges Diana Gribbon Motz, Pamela A. Harris and James A. Wynn, Jr. (collectively, "Defendants"), alleging that Defendants committed tortious, unconstitutional and "non-judicial" acts in their decision to affirm the dismissal of Plaintiff's complaint in prior litigation styled *Chien v. Grogan*, 710 F. App'x 600 (4th Cir. 2018), *aff'g*, 2017 WL 3381978 (E.D. Va. Aug. 3, 2017). This matter comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on Defendants' Rule 12(b)(1) Motion to Dismiss (ECF No. 13) and Plaintiff's "Motion for Alternatively [sic] Relief Chien under '28 § 1651. Writs' & Under Three Judge Panel for Review of Statute of VA Code '§8.01-508'" ("Motion for Alternative Relief") (ECF No. 17), Motion for a Hearing (ECF No. 19), Motion to Allow One-Day Delay for Delivery of "Objection" due to Issue of Post Office ("Motion for a Delay") (ECF No. 20), second "Motion for Alternatively [sic] Relief Chien under '28 § 1651. Writs' & Under Three Judge Panel for Review of Statute of VA Code '§8.01-508'" ("Second Motion for Alternative Relief") (ECF No. 21) and two pleadings titled "Supplementary to Chien's Various Pleadings Based on Fair Debt Collection Practices Act"

("Supplement") (ECF No. 25) and "More of Supplementary to Chien's Various Pleadings Based on Fair Debt Collection Practices Act" ("Additional Supplement") (ECF No. 26), (collectively, "Plaintiff's Motions").

For the reasons set forth below, the Court recommends that Defendants' Motion to Dismiss (ECF No. 13) be GRANTED, that Plaintiff's Complaint (ECF No. 1) be DISMISSED WITH PREJUDICE and that Plaintiff's Motions (ECF Nos. 17, 19, 20, 21, 25, 26) be DENIED.

## I.    FACTUAL BACKGROUND

When, as here, a defendant raises substantive challenges to a court's jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the court may consider facts outside of a complaint and need not accept the allegations in the complaint as true. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). Accordingly, the Court will consider facts beyond Plaintiff's Complaint to resolve Defendants' Motion to Dismiss. For the purposes of establishing background, the Court will also consider the facts as outlined in *Chien v. Grogan* (*Chien I*), 2017 WL 3381978, at *1-3 (E.D. Va. Aug. 3, 2017).

### A.    Defamation Lawsuit, Debt Collection and Contempt Detention

At some point before 2011, Commonwealth Biotechnologies Incorporated ("CBI") retained Plaintiff, an independent financial consultant, to file forms on the company's behalf before the Securities and Exchange Commission and to manage CBI's shareholder meetings. *Chien I*, 2017 WL 3381978, at *1. While working with CBI, Plaintiff met Richard J. Freer ("Freer"), who served as CBI's chief operating officer. *Id.*

In 2011, CBI filed for bankruptcy in Virginia. *Id.*; *see also In re Commonwealth Biotechnologies, Inc.*, 2012 WL 5385632, at *1 (E.D. Va. Bkr. Nov. 1, 2012) (noting bankruptcy filing date of January 20, 2011). Around the same time, Plaintiff accused Freer of committing

fraud and embezzlement. (Compl. (ECF No. 1) ¶ 1); *Chien I*, 2017 WL 3381978, at *1. In response, on February 17, 2012, Freer filed a defamation lawsuit against Plaintiff in the Circuit Court for the County of Chesterfield. (Compl. ¶ 2); *Chien I*, 2017 WL 3381978, at *1; *Freer v. Chien (Freer I)*, No. CL12000485-00 (Va. Cir. Ct.). Upon receiving a judgment for $1.6 million, on September 26, 2012, Freer moved to domesticate the Virginia judgment in Connecticut, where Plaintiff lived and owned property. (Compl. ¶¶ 1, 2); *Chien I*, 2017 WL 3381978, at *1; *Freer v. Chien (Freer II)*, No. NNH-CV12-4053717-S (Conn. Super. Ct.).

On January 4, 2013, Freer also instigated judgment collection proceedings in Virginia. (Compl. ¶ 3); *Chien I*, 2017 WL 3381978, at *1; *Freer I*, No. CL12000485-00. William Grogan ("Grogan") oversaw these proceedings on behalf of the Chesterfield County Circuit Court in his role as Commissioner in Chancery. (Compl. ¶ 3); *Chien I*, 2017 WL 3381978, at *1. In this capacity, and over Plaintiff's objections, Grogan ordered that Plaintiff transfer to Freer the shares that Plaintiff owned in two companies, including China Bull Management ("CBM"), giving Freer control of those companies. (Compl. ¶¶ 22-23); *Chien I*, 2017 WL 3381978, at *1. After Plaintiff refused to appear before the Chancery Court to answer interrogatories, Grogan also issued a writ of capias, ordering Plaintiff's detention for contempt. (Compl. ¶¶ 3, 28); *Chien I*, 2017 WL 3381978, at *1.

While detained, Plaintiff filed multiple suits in several jurisdictions, challenging the debt collection proceedings and his detention. (Compl. ¶ 28); *Chien I*, 2017 WL 3381978, at *2. On April 26, 2013, Plaintiff filed two separate suits in Virginia's federal courts, namely: (1) an adversarial proceeding against Freer and CBI in the Bankruptcy Court for the Eastern District of Virginia, *Chien v. Commonwealth Biotechs., Inc.*, 2013 WL 3387785 (E.D. Va. Bkr. July 1, 2013); and, (2) a suit against Chesterfield County, Grogan and others in this Court, seeking

3

damages under 42 U.S.C. § 1983 and habeas relief, *Chien v. Chesterfield Cty.*, 2013 WL 12099300 (E.D. Va. Nov. 6, 2013). On July 1, 2013, the Bankruptcy Court dismissed Plaintiff's complaint, *Commonwealth Biotechs.*, 2013 WL 3387785, which this Court affirmed on appeal, further enjoining Plaintiff from filing any more pleadings in the underlying CBI bankruptcy proceedings without first retaining counsel or receiving leave of court, *Chien v. Freer*, 2014 WL 4072147, at *2-3 (E.D. Va. Aug. 15, 2014). On November 6, 2013, this Court dismissed Plaintiff's § 1983 action and habeas petition for failure to state a claim, *Chesterfield Cty.*, 2013 WL 12099300 at *2, which the Fourth Circuit affirmed, *Chien v. LeClairRyan*, 566 F. App'x 275 (4th Cir. 2014).

Plaintiff also filed claims in Virginia's state courts. In June 2014, while still incarcerated, Plaintiff filed two lawsuits in the Circuit Court for Prince George County, seeking relief against Grogan, Freer, Andrew Clark ("Clark") and the Commonwealth of Virginia for alleged violations arising from the debt collection proceedings. *Chien I*, 2017 WL 3381978, at *2; *see also Chien v. Freer*, No. CL14000491-00 (Va. Cir. Ct.) (showing dismissal on September 8, 2014); *Chien v. Commonwealth*, No. CL14000549-00 (Va. Cir. Ct.) (same). The Prince George County Circuit Court dismissed Plaintiff's claims in part, because the defendants enjoyed judicial and sovereign immunity. *Chien I*, 2017 WL 3381978, at *2. And, in 2015 and 2016, Plaintiff filed two more actions in Virginia state court — one seeking habeas relief and the other seeking civil relief against Grogan. *Id.*; *see also Chien v. Riverside Reg'l Jail*, No. CL16HC1123-00 (Va. Cir. Ct.) (showing dismissal on July 13, 2016); *Chien v. Grogan*, No. CL15001569-00 (Va. Cir. Ct.) (showing dismissal on August 19, 2015 after demurrer hearing).

Finally, Plaintiff filed two lawsuits in 2012 and 2016 in the United States District Court for the District of Connecticut, again seeking relief from the Virginia debt collection proceedings

and his release from detention. *Id.* (internal citations omitted); *see also Chien v. Clark*, 2017 WL 6629263, at \*1-3 (D. Conn. Sept. 8, 2017) (dismissing Plaintiff's 211-page complaint, awarding sanctions and enjoining Plaintiff from filing any further pleadings), *aff'd*, 2018 WL 5880582 (2d Cir. July 12, 2018), *petition for cert. filed*, (U.S. Dec. 21, 2018) (No. 18-598); *Chien v. Commonwealth Biotechs., Inc.*, 2013 WL 4482750, at \*1 (D. Conn. Aug. 21, 2013) (dismissing Plaintiff's malicious prosecution claims against CBI, Freer and LeClairRyan, PC). Eventually, on June 27, 2016, Chesterfield County Circuit Court Judge Frederick Rockwell, III ("Judge Rockwell"), ordered Plaintiff's release after 1,146 days in jail. (Compl. ¶ 3, 6); *Riverside Reg'l Jail*, No. CL16HC1123-00.

## B.    Underlying Litigation

Following his release, Plaintiff continued to seek judicial relief, and, on March 28, 2017, Plaintiff filed a 123-page complaint in this Court, alleging 195 counts against Grogan and five counts against Grogan's law firm, William K. Grogan & Associates, including violations of federal and state law and the United States Constitution. *Chien I*, 2017 WL 3381978, at \*2-3. Based on these alleged violations, Plaintiff sought return of the assets that Grogan had ordered transferred to Freer. *Id.* On August 3, 2017, United States District Judge Liam O'Grady ("Judge O'Grady") dismissed Plaintiff's complaint under the *Rooker-Feldman* doctrine, which deprives federal district courts of jurisdiction to adjudicate or review issues presented to and decided by a state court, or that are "inextricably intertwined with" questions ruled on by a state court. *Chien I*, 2017 WL 3381978, at \*3 (citing *Plyler v. Moore*, 129 F.3d 728, 731 (4th Cir. 1997); *Willner v. Frey*, 243 F. App'x 744, 745-56 (4th Cir. 2007)). Because the relief that Plaintiff sought — return of the assets that Plaintiff lost during the debt collection proceedings — would require appellate review of state-court judgments, Judge O'Grady held that the district court lacked

5

jurisdiction to consider Plaintiff's claims, no matter the legal theories that Plaintiff presented. *Id.*
Judge O'Grady added that principles of *res judicata* further warranted dismissal. *Id.*

Plaintiff appealed Judge O'Grady's decision and, on February 7, 2018, Defendants issued
a *per curiam* opinion affirming the dismissal of Plaintiff's complaint. *Chien v. Grogan* (*Chien
II*), 710 F. App'x 600, 600-01 (4th Cir. 2018). Specifically, Defendants agreed with Judge
O'Grady that the *Rooker-Feldman* doctrine precluded a district court from adjudicating
Plaintiff's claims. *Id.*

### C.   Procedural History

Following Defendants' ruling, on February 14, 2018, Plaintiff filed suit in this Court
(ECF No. 1), alleging that Defendants' ruled in error. (Compl. ¶ 8.) Plaintiff's Complaint
argues that Grogan's orders transferring Plaintiff's assets to Freer and holding Plaintiff in
contempt violated Plaintiff's rights, various statutes and the United States Constitution. (Compl.
¶¶ 14-29.) Specifically, Plaintiff argues that Grogan could not order the transfer of a controlling
share of Plaintiff's company, CBM, because CBM's shareholders voted on July 10, 2016 to
reject Freer's takeover of the company. (Compl. ¶ 22-26.) In addition, Plaintiff argues that
CBM is registered in Nevada, rendering the company outside the personal jurisdiction of
Virginia's courts and voiding any order transferring the company's assets. (Compl. ¶ 26.)

As to his confinement for contempt, Plaintiff argues that the Chesterfield County Circuit
Court never endorsed Grogan's detention order. (Compl. ¶¶ 14-15.) Instead, Plaintiff accuses
Grogan and "Clerk Craze" of impersonating Judge Rockwell to fraudulently order Plaintiff's
detention. (Compl. ¶¶ 14-15.) According to Plaintiff, Judge Rockwell in fact determined that
Grogan lacked the authority to order Plaintiff's confinement. (Compl. ¶ 14.) And Plaintiff
argues that his 2013 bankruptcy proceedings in the Bankruptcy Court for the District of

Connecticut required Grogan to stay the Virginia debt collection proceedings. (Compl. ¶¶ 29-30.) Ultimately, Plaintiff alleges that Grogan's contempt order amounted to "kidnapping." (Compl. ¶ 28.)

Given the above, Plaintiff contends that Grogan committed "subject error" in ordering the transfer of CBM's assets and Plaintiff's detention. (Compl. ¶ 30.) Plaintiff asserts that Defendants likewise committed "subject error" when they affirmed the dismissal of Plaintiff's challenge to those orders. (Compl. ¶¶ 30, 32.) Because of their alleged errors, Plaintiff argues that Defendants, like Grogan, committed "non-judicial acts" when they issued their decision. (Compl. ¶ 32.) Plaintiff adds that, because state authorities failed to assign him an attorney for his civil and habeas lawsuits and denied him access to documents and resources needed to prosecute those suits, those authorities violated Plaintiff's Sixth Amendment rights and Defendants had no jurisdiction over his case. (Compl. ¶ 33.) Ultimately, without providing specific evidence in support, Plaintiff accuses Defendants of "wantonly, recklessly or maliciously" conspiring to "protect" Grogan's alleged violations of Plaintiff's Fourth, Fifth, Sixth, Seventh and Fourteenth Amendment rights, resulting in Grogan's "unjust enrichment" and Plaintiff's loss of assets. (Compl. ¶¶ 36-42.) Based on these accusations, in addition to fees and costs, Plaintiff seeks an apology from Defendants with an admission that Defendants committed "subject error" in affirming Judge O'Grady's dismissal of *Chien I*. (Compl. ¶¶ 44-46.)

In response to Plaintiff's Complaint, on April 25, 2018, Defendants filed their Motion to Dismiss (ECF No. 13) pursuant to Federal Rule of Civil Procedure 12(b)(1). Plaintiff filed a response brief (ECF No. 16) on May 17, 2018, rendering Defendants' Motion to Dismiss now ripe for review. Plaintiff also filed six motions, including a Motion for Alternative Relief (ECF No. 17) and Motion for a Hearing (ECF No. 19) on May 17, 2018; a Motion for a Delay (ECF

No. 20) and Second Motion for Alternative Relief (ECF No. 21) on May 21, 2018; and, a Supplement (ECF No. 25) and Additional Supplement (ECF No. 26) on December 17 and December 18, 2018, which the undersigned construes as motions to amend Plaintiff's Complaint. The time for a response to these motions has passed without any filings, rendering Plaintiff's Motions also ripe for review.

## II.     DEFENDANTS' MOTION TO DISMISS

The undersigned will first consider Defendants' Motion to Dismiss, for if the Court lacks subject matter jurisdiction over this case, it lacks the authority to rule on Plaintiff's Motions.

### A.     Standard of Review

A motion made pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the court's jurisdiction over the subject matter of the complaint. A defendant moving for dismissal for lack of subject matter jurisdiction may either attack the complaint on its face, asserting that the complaint "fails to allege facts upon which subject matter jurisdiction can be based," or, as here, may attack "the existence of subject matter jurisdiction in fact, quite apart from any pleadings." *White v. CMA Const. Co., Inc.*, 947 F. Supp. 231, 233 (E.D. Va. 1996) (internal citations omitted). In either case, the plaintiff bears the burden of proof to establish jurisdiction. *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). The Court must dismiss an action if it determines that it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

### B.     Analysis

Defendants contend that the Court lacks jurisdiction to adjudicate Plaintiff's claims, because doing so would amount to a review of a state court decision. (Mem. Supp. Def.'s Mot. to Dismiss ("Defs.' Mem.") (ECF No. 14) at 6.) In support of their argument, Defendants cite to

8

the *Rooker-Feldman* doctrine and argue that Plaintiff's Complaint, like his 200-count complaint in *Chien I*, seeks nothing more than appellate review of issues already adjudicated in state court. (Defs.' Mem. at 6 (internal citations omitted).)

Defendants further argue that they enjoy absolute judicial immunity. (Defs.' Mem. at 7.) Specifically, because they acted within their jurisdiction when issuing the decision about which Plaintiff complains, Defendants assert that Plaintiff cannot prosecute a lawsuit against them for retrospective relief. (Defs.' Mem at 7-8 (internal citations omitted).)

In response, Plaintiff argues that the *Rooker-Feldman* doctrine relied on by Defendants violates both constitutional and statutory law. (Pl.'s Obj. to Defs.' Mot. to Dismiss ("Pl.'s Mem.") (ECF No. 16) at 2-3.) Specifically, because constitutional and statutory law serve as superior sources of law to judicially created doctrines like *Rooker-Feldman*, Plaintiff argues that application of that doctrine to this case would violate constitutional and statutory law by depriving Plaintiff of a remedy for the constitutional and statutory harms that he alleges. (Pl.'s Mem. at 3.) Plaintiff further maintains that Judge O'Grady's decision in *Chien I* constituted a "non-judicial" act, because Judge O'Grady dismissed Plaintiff's complaint without any filings from the defendants. (Pl.'s Mem. at 4-5.) Plaintiff also raises several alleged errors in Judge O'Grady's decision and characterizes those alleged errors as "administrative" — not "judicial." (Pl.'s Mem. at 5.) Plaintiff argues that the non-judicial errors committed by Judge O'Grady contaminated Defendants' decision. (Pl.'s Mem. at 7-8.) Ultimately, Plaintiff asserts that Defendants actions exceeded their jurisdiction and therefore judicial immunity does not protect them. (Pl.'s Mem. at 24-25.)

1.      **The Court is Without Jurisdiction Pursuant to the *Rooker-Feldman* Doctrine.**

"Under the *Rooker-Feldman* doctrine, a 'party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court.'" *Am. Reliable Ins. Co. v. Stillwell*, 336 F.3d 311, 316 (4th Cir. 2003) (quoting *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994)).  Courts consider the doctrine jurisdictional, obliging a court to consider the doctrine before entertaining a plaintiff's claims.  *Id.* (citing *Plyler*, 129 F.3d at 731; *Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 197 n.5 (4th Cir. 1997)).  Indeed, the *Rooker-Feldman* doctrine originated from statutes "'vest[ing] the authority to review state court judgments in the United States Supreme Court alone'" and "empower[ing] the federal district courts to exercise only original jurisdiction." *Id.* (quoting *Brown & Root, Inc. v. Breckenridge*, 211 F.3d 194, 198-99 (4th Cir. 2000)); *see also* 28 U.S.C. § 1257(a) ("Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari . . ."); 28 U.S.C. §§ 1331, 1332 (granting district courts original jurisdiction over cases raising federal questions or involving parties with diverse citizenship and more than $75,000 in controversy).  Thus, the *Rooker-Feldman* doctrine "preserves a fundamental tenet in our system of federalism that, with the exception of habeas cases, appellate review of state court decisions occurs first within the state appellate system and then in the United States Supreme Court." *Id.*  Accordingly, a district court lacks jurisdiction to adjudicate a case if doing so would "pass upon the merits of a state court decision," *Jordahl*, 122 F.3d at 202, including "issues that are inextricably intertwined with the issues that were before the state court," *Washington v. Wilmore*, 407 F.3d 274, 279 (4th Cir. 2005) (internal quotations omitted).  The fundamental question is whether a plaintiff's claims require the functional equivalent of appellate review, and a litigant may not circumvent the

*Rooker-Feldman* doctrine by simply refashioning an attack on a state court judgment as some other kind of claim. *Am. Reliable Ins.*, 336 F.3d at 316 (internal citations omitted); *see also Jordahl*, 122 F.3d at 202 (applying the *Rooker-Feldman* doctrine despite plaintiff challenging the state court judgment under the guise of a § 1983 claim).

Here, Plaintiff's Complaint most certainly constitutes an appeal of state court judgments. Although Plaintiff fashions the counts of his Complaint to appear as though he is raising novel statutory and constitutional claims against Defendants, (Compl. ¶¶ 36-42), the substance of Plaintiff's arguments relies on his belief that Grogan and the Chesterfield County Circuit Court violated his rights — a belief that Plaintiff should have raised on direct appeal, not before this Court. (Compl. ¶¶ 14-42). Importantly, for this Court to determine whether Defendants committed "subject error," as Plaintiff alleges, the Court would have to reach the merits of issues already decided upon in state court, or issues inextricably intertwined with those addressed in state court. Indeed, Plaintiff admits that he has repeatedly challenged Grogan's authority to order transfer of Plaintiff's assets and Plaintiff's detention. (Compl. ¶ 28 (stating that Plaintiff "repeatedly sued, or appealed what [Grogan and others] did"), ¶ 33 (alleging that Plaintiff filed "12 countersuits or appeals in both [Virginia] and [Connecticut]" while in jail)); *see also Chien I*, 2017 WL 3381978, at *2 (describing multiple lawsuits filed in federal and state court challenging Grogan's orders). Plaintiff's Complaint in this case serves only to relitigate Plaintiff's earlier challenges to the debt collection proceedings and his detention, and Plaintiff's desired relief — a letter from Defendants admitting that they erred in affirming dismissal of Plaintiff's challenge to Grogan's orders — though disguised as something other than appellate relief, serves the functional equivalent of a direct appeal, seeking ultimately to void the judgments of state courts.

Moreover, although Plaintiff argues that application of the *Rooker-Feldman* doctrine to this case would deprive Plaintiff of a remedy under superior sources of law, *i.e.*, the Constitution and federal and state statutes, (Pl.'s Mem. at 2-3), the *Rooker-Feldman* doctrine in fact originated from statutes establishing the jurisdiction of the federal courts — statutes that Congress passed pursuant to its constitutional authority to "ordain and establish" the inferior courts of the United States. *See* U.S. Const. Art. III, § 1 (granting Congress the power to establish the inferior courts); *Am. Reliable Ins. Co.*, 336 F.3d at 316 (describing the statutory underpinnings of the *Rooker-Feldman* doctrine). Regardless, Plaintiff has enjoyed multiple opportunities in both federal and state court to raise constitutional and statutory challenges to Grogan's orders, so his argument that the application of the *Rooker-Feldman* doctrine to this case would impermissibly deprive him of a constitutional or statutory remedy rings hollow.

Because Plaintiff's Complaint amounts to a direct appeal of state-court judgments, the undersigned recommends that the Court grant Defendants' Motion to Dismiss pursuant to the *Rooker-Feldman* doctrine.

## 2. Defendants Also Enjoy Absolute Judicial Immunity.

Alternatively, the Court should also dismiss Plaintiff's claims under the doctrine of judicial immunity. Although somewhat distinct from subject matter jurisdiction, courts have often considered immunity arguments, including arguments of judicial immunity, on Rule 12(b)(1) motions to dismiss. *See, e.g.*, *Cadmus v. Williamson*, 2016 WL 929279, at *4-5 (W.D. Va. Feb. 1, 2016) (considering sovereign and judicial immunity arguments on 12(b)(1) motion); *Trantham v. Henry Cty. Sheriff's Office*, 2011 WL 863498, at *3 (W.D. Va. Mar. 10, 2011) (noting that "there is a recent trend among the district courts within the Fourth Circuit to consider sovereign immunity under Rule 12(b)(1)"); *Harbison v. Virginia*, 2010 WL 3655980, at *7-8

(E.D. Va. Aug. 11, 2010) (recommending dismissal under 12(b)(1) after defendant judges raised judicial immunity argument), *report & recommendation adopted*, 2010 WL 3655977 (E.D. Va. Sept. 10, 2010), *aff'd sub nom. Harbison v. Cuccinelli*, 413 F. App'x 626 (4th Cir. 2011).

It is well established that "'a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehension of personal consequences to himself.'" *Stump v. Sparkman*, 435 U.S. 349, 359-60 (1978) (quoting *Bradley v. Fisher*, 80 U.S. 335, 347 (1872)). Accordingly, a judge enjoys absolute immunity from suit unless either (1) the judge's injurious acts constitute "non-judicial actions, *i.e.*, actions not taken in the judge's judicial capacity" or, (2) if the injurious acts are judicial in nature, the judge performed those acts "in the complete absence of all jurisdiction." *Mireles v. Waco*, 402 U.S. 9, 11-12 (1991) (internal citations omitted). Whether an act proves non-judicial depends on "the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and . . . the expectations of the parties, *i.e.*, whether they dealt with the judge in his [or her] judicial capacity." *Stump*, 435 U.S. at 362. As to judicial acts, courts draw distinctions between acts done in "excess of jurisdiction" and those done "in the clear absence of all jurisdiction." *Stump*, 435 U.S. at 356 n.6 (quoting *Bradley*, 80 U.S. at 351-52). In the case of the former, a judge enjoys immunity despite exceeding his or her jurisdiction over the subject matter of an issue; whereas, in the case of the latter, a judge may be held to account for actions performed without any authority. *Bradley*, 80 U.S. at 352 (explaining, by way of example, that if a probate judge with authority over only wills and estates ruled on a criminal matter, the judge's actions would be in the clear absence of jurisdiction, whereas a criminal judge who convicted a defendant for a non-existent crime would be merely in excess of jurisdiction and still protected by judicial immunity). If neither of these

13

exceptions apply, judicial immunity will protect a defendant judge from suit, even if the judge acted maliciously or corruptly. *Stump*, 435 U.S. at 359-64.

Here, Plaintiff fails to allege, and the undersigned fails to find, any facts or evidence to show that Defendants should not enjoy judicial immunity. Although Plaintiff alleges that Judge O'Grady committed "administrative" and procedural errors that contaminated Defendants' decision to affirm Judge O'Grady's decision, (Pl.'s Mem. at 3-5, 7-8), no evidence or alleged facts support Plaintiff's conclusory characterization of Judge O'Grady's actions as "non-judicial," and the undersigned finds no precedent to support Plaintiff's non-judicial-act-contamination theory. In fact, Plaintiff's assertion that Judge O'Grady issued his *Chien I* decision without any appearance from the defendants contradicts unambiguous evidence that Judge O'Grady dismissed Plaintiff's complaint on a motion *by the defendants*. *See Chien I*, 2017 WL 3381978, at *1 ("This matter comes before the Court on Defendants' Motion to Dismiss for lack of subject matter jurisdiction and failure to state a claim."). Nor does the evidence show that Plaintiff or his opponents viewed Defendants as anything other than appellate judges issuing an appellate decision. Indeed, Plaintiff appealed to the Fourth Circuit, on which Defendants serve, knowing that appellate judges would hear his case. (Compl. ¶ 7 (noting that Plaintiff appealed case to Fourth Circuit after receiving unfavorable ruling); *see also Chien II*, 710 F. App'x at 600 (listing Plaintiff as the appellant). Defendants' decision therefore constituted a judicial act.

Defendants also acted within their jurisdiction. Although Plaintiff argues that Defendants had no jurisdiction to affirm the dismissal of his claims, (Pl.'s Mem. 24-25), as mentioned, Plaintiff appealed Judge O'Grady's decision. *See Chien II*, 710 F. App'x at 600 (listing Plaintiff as the appellant). By appealing Judge O'Grady's decision, Plaintiff willfully availed himself of

Defendants' jurisdiction, and Defendants clearly had jurisdiction to adjudicate Plaintiff's case. *See* 28 U.S.C. § 1291 ("The courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . ."). Thus, the undersigned finds no evidence that Defendants acted in "the complete absence of all jurisdiction," and judicial immunity therefore protects Defendants from Plaintiff's claims for retrospective relief.[1]

As to Plaintiff's contention that judicial immunity does not protect Defendants from claims seeking prospective injunctive and declaratory relief, the undersigned finds that Plaintiff seeks no such relief in this case. (Pl.'s Mem. at 24-25 (citing *Strauch v. Dowd*, 651 F. App'x 72, 73 (2d Cir. 2016) (internal citations omitted)).) Prospective relief necessarily implies that the relief sought will prevent some irreparable future harm. *See Pulliam v. Allen*, 466 U.S. 522, 537 (1984) (explaining that courts have granted injunctive relief against judicial actions "*to prevent irreparable injury to a petitioner's constitutional rights*" (emphasis added)). Here, on the other hand, Plaintiff's request that the Court order Defendants to issue a letter admitting that they committed "subject error," although on its face appearing to request an injunction for future action by Defendants, in reality, serves only to retrospectively cure a past harm. (Compl. ¶ 44.) And, to the extent that Plaintiff seeks prospective relief, this Court lacks clear authority to order such relief. Indeed, if a district court could order judges on the courts of appeals to admit "subject error" in their prior decisions, appellate review would become an exercise in futility.

---

[1]     Plaintiff also argues that Defendants lacked jurisdiction, because the state authorities violated his Sixth Amendment rights by refusing to appoint a lawyer to represent him and denying him access to documents for his various civil lawsuits and habeas petitions. The undersigned finds this argument inapposite given Plaintiff's election to appeal the *Chien I* decision to the court on which Defendants sit. (Compl. ¶ 33.) The undersigned further notes that the Sixth Amendment guarantees only indigent criminal defendants the right to a lawyer, not civil plaintiffs and habeas petitioners. U.S. Const. amend. VI.; *see also Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) (holding that prisoners do not have a constitutional right to counsel when mounting collateral attacks on their detention).

Ultimately, Plaintiff's Complaint serves as a clear example of the types of claims against which judicial immunity protects judges. *See Forrester v. White*, 484 U.S. 219, 225 (1988) (noting that judicial immunity originated, at least in part, to "insulat[e] judges from vexatious actions prosecuted by disgruntled litigants" (citing *Bradley*, 80 U.S. at 348)). Accordingly, the undersigned recommends that the Court dismiss Plaintiff's Complaint pursuant to the judicial immunity doctrine.

### III.   PLAINTIFF'S MOTIONS

Although the Court lacks subject matter jurisdiction over Plaintiff's claims, including his Motions, in the interest of finality and in the alternative, the undersigned will also consider the merits of Plaintiff's Motions.

### A.   The Undersigned Recommends that the Court Deny Plaintiff's Motions for Alternative Relief.

In addition to his Complaint, Plaintiff filed two Motions for Alternative Relief (ECF Nos. 17, 21), both requesting: (1) the issuance of writs declaring that (a), while detained for contempt, Plaintiff did not serve as an inmate within the meaning of 28 U.S.C. § 1915 and (b), pursuant to 42 U.S.C. § 1983, Defendants' decision in *Chien II* violated Plaintiff's constitutional rights; (2) that Plaintiff's challenge to Va. Code § 8.01-508 be heard by a three-judge panel pursuant to 28 U.S.C. § 2284(b)(1) and, (3) that the Court hold a hearing on Plaintiff's Motions, his Complaint and his objections to Defendants' Motion to Dismiss. (Mem. Supp. Mot. Alt. Relief ("Alt. Relief Mem.") (ECF Nos. 18, 22) at 1-2.) The undersigned will consider each of these requests in turn.

As to Plaintiff's request that the Court issue writs declaring that Plaintiff did not serve as an "inmate" within the meaning of 28 U.S.C. § 1915 and that Defendants' *Chien II* opinion violated his rights, the undersigned notes that the All Writs Act, 28 U.S.C. § 1651, to which Plaintiff cites, "is a residual source of authority to issue writs not otherwise covered by statutes."

*Penn. Bureau of Correction v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985). Thus, "[w]here a statute specifically addresses the particular issue at hand, it is that authority, not the All Writs Act, that is controlling." *Id.* Here, Plaintiff essentially seeks a declaratory judgment pursuant to 28 U.S.C. § 2201. Accordingly, the undersigned will analyze Plaintiff's requested relief under that statute, not the All Writs Act.

The federal Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. "Actual controversy" denotes a "definite and concrete" dispute that "touch[es] the legal relations of parties having adverse legal interests." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal quotations omitted). Importantly, a declaratory judgment must have a "conclusive" effect on future action by the parties. *Id.* Without an actual controversy, a litigant lacks standing to pursue declaratory relief. *Id.*

Here, a declaratory judgment that Plaintiff did not serve time as an "inmate" under 28 U.S.C. § 1915 affects only Plaintiff's personal rights in retrospect, not Plaintiff's rights in relation to Defendants. Indeed, whether Plaintiff's detention for contempt made him an inmate, free person or other categorization proves of no consequence to Defendants' decision affirming Judge O'Grady and most certainly has zero effect on Defendants' future actions. Thus, the undersigned finds that Plaintiff lacks standing to seek a declaration as to his status under 28 U.S.C. § 1915.

Neither may Plaintiff receive a declaratory judgment that Defendants' *Chien II* decision violated Plaintiff's rights under 42 U.S.C. § 1983. Ignoring the fact that § 1983 does not apply to federal judges and notwithstanding the impropriety of this Court declaring an appellate decision

17

void, Plaintiff may not seek a declaratory judgment as a substitute for direct appeal. *Figueroa v. United States*, 2013 WL 499473, at *2 (W.D. Va. Feb. 8, 2013) (noting that the Declaratory Judgment Act "does not provide a means whereby previous judgments by . . . federal courts may be reexamined" (internal citations omitted)). Accordingly, Plaintiff may not receive a judgment declaring Defendants' *Chien II* decision void.

As to Plaintiff's request, pursuant to 28 U.S.C. § 2284, that a three-judge panel hear his challenge to Va. Code § 8.01-508, this case is not one for which Congress has authorized a three-judge district court. Under Section 2284, Congress authorized three-judge district courts to consider cases "challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body" or "when otherwise required by Act of Congress." 28 U.S.C. § 2284. Plaintiff, on the other hand, seeks a three-judge district court to challenge the constitutionality of a statute, Va. Code § 8.01-508, relating to the detention of a debtor. Because Plaintiff alleges that his challenge to this statute "is against Virginia State," Plaintiff believes that Section 2284 entitles him to a three-judge panel. However, Plaintiff misunderstands the law. Plaintiff fails to bring an appropriate cause of action warranting consideration by a three-judge district court. Indeed, Plaintiff's challenge to the Virginia statute has no bearing on his claims against Defendants, and the statute formed no part of Defendants' decision. Thus, Plaintiff's request for a three-judge district court lacks merit.[2]

Likewise, the undersigned finds no reason to grant Plaintiff's request for a hearing on his Motions for Alternative Relief, his Complaint or his Response to Defendants' Motion to

---

[2]     To the extent that the Court could construe Plaintiff's challenge to Va. Code § 8.01-508 as a motion for leave to amend Plaintiff's Complaint to include Virginia as a defendant and raise Plaintiff's challenge, the undersigned finds that such an amendment would prove futile, because the Court lacks jurisdiction to adjudicate such a claim under the *Rooker-Feldman* doctrine.

Dismiss. Whether to grant a hearing falls within the Court's discretion. Fed. R. Civ. P. 78(b); E.D. Va. Civ. R. 7(J). Indeed, deciding on dispositive motions without a hearing "is unquestionably constitutional." *Wilkins v. Rogers*, 581 F.2d 399, 405 (4th Cir. 1978). Here, the materials presented, including multiple pleadings filed by Plaintiff (ECF Nos. 1, 16, 17, 18, 19, 20, 21, 25, 26), sufficiently present the issues at hand such that a hearing would not materially aid in the decisional process.

Because all of the requests set forth in Plaintiff's Motions for Alternative Relief lack merit, even if the Court had jurisdiction over this case, the undersigned recommends that the Court deny both of the motions.

### B. The Undersigned Recommends that the Court Deny Plaintiff's Motion for a Hearing and Motion for a Delay.

The undersigned further recommends denial of Plaintiff's Motion for a Hearing (ECF No. 19) and Motion for a Delay (ECF No. 20). For one, Plaintiff's Motion for a Hearing simply restates Plaintiff's request for a hearing in his Motions for Alternative Relief. Accordingly, for the same reasons set forth above, the undersigned recommends that the Court deny Plaintiff's Motion for a Hearing.

As to Plaintiff's Motion for a Delay, which the undersigned construes as a motion for an extension of time in which to file a response to Defendants' Motion to Dismiss, the undersigned has considered Plaintiff's Response to Defendants' Motion to Dismiss (ECF No. 16) in drafting this Report and Recommendation. Therefore, the undersigned recommends that the Court deny as moot Plaintiff's Motion for a Delay.

C.   **Construing Plaintiff's Supplementary Pleadings as Motions to Amend, the Undersigned Recommends that the Court Deny Both Motions.**

On December 17 and December 18, 2018, Plaintiff filed two pleadings titled "Supplementary to Chien's Various Pleadings Based on Fair Debt Collection Practices Act" (ECF No. 25) and "More Supplementary to Chien's Various Pleadings Based on Fair Debt Collection Practices Act" (ECF No. 26), which the undersigned construes as motions to amend Plaintiff's Complaint to include claims against Defendants, Freer, Grogan, William K. Grogan & Associates ("WGA") and LeClairRyan, PC, under the Fair Debt Collection Practices Act ("FDCPA").

Under Federal Rule of Civil Procedure 15, a "court should freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2).  As such, leave to amend should be denied only "when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1999).  This Court has previously found proposed amendments futile when the party requesting leave to amend had at least two full opportunities to plead their desired claim. *See, e.g., Field v. GMAC LLC*, 660 F. Supp. 2d 679, 690 (E.D. Va. 2008) (denying leave to amend when the plaintiff had litigated "dozens of different causes of action" against the defendant in federal and state court), *aff'd*, 328 F. App'x 873 (4th Cir. 2009); *Iron Workers Local 16 Pension Fund v. Hilb Rogal & Hobbs Co.*, 432 F. Supp. 2d 571, 595 (E.D. Va. 2006) (denying leave to amend when the plaintiff already had two opportunities to state desired claim).

Here, Plaintiff has had far more than two opportunities to present his claims against Freer, Grogan, WGA and LeClairRyan, rendering futile Plaintiff's proposed claims as to those parties.  By Plaintiff's own admission, he has litigated at least a dozen lawsuits and appeals

20

relating to the debt collection proceedings, including a 200-count complaint against Grogan and WGA and lawsuits against Freer and LeClairRyan. (Compl. ¶ 33); *see also Chien I*, 2017 WL 3381978, at *2-3 (suing Grogan and WGA); *Chesterfield Cty.*, 2013 WL 12099300, at *2 (suing Chesterfield County, Grogan, WGA and LeClairRyan); *Commonwealth Biotechs., Inc.*, 2013 WL 4482750, at *1 (suing CBI, Freer and LeClairRyan). And, notably, all of Plaintiff's attempts to retrieve his lost assets, including this one, have failed. *See Chien I*, 2017 WL 3381978, at *1-2, 7 (describing Plaintiff's litigation history). Clearly, Plaintiff has had more than a fair shot, using literally hundreds of legal theories, to void Grogan's debt collection orders. Plaintiff should not get another. Therefore, the undersigned recommends that the Court deny Plaintiff leave to amend his Complaint to include FDCPA claims against Freer, Grogan, WGA and LeClairRyan.

As to Plaintiff's FDCPA claims against Defendants, notwithstanding Defendants' judicial immunity, the undersigned finds that Plaintiff fails to state a plausible claim against Defendants under the FDCPA, rendering those claims futile.[3] Specifically, Plaintiff fails to allege facts showing that Defendants constituted "debt collectors" covered by the FDCPA. *See* 15 U.S.C. § 1692a, 1692a(6)(C) (defining "debt collector" to mean "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts . . ." and exempting federal and state officers acting in the performance of their official duties from the statutory definition). Accordingly, the undersigned recommends

---

[3] The undersigned further finds that Plaintiff's proposed amendments fail to state a claim against Freer, Grogan, WGA and LeClairRyan. Like Defendants, the FDCPA exempts Grogan, as a government official acting in the performance of his official duties, from its definition of "debt collector." 15 U.S.C. § 1692a(6)(C). Plaintiff also fails to allege facts suggesting that Freer, LeClairRyan and WGA's principal purpose was the collection of debts, exempting those parties from the FDCPA's requirements. *See id.* at § 1692a(6) (defining "debt collector"). In any case, even if Defendants, Freer, Grogan, WGA and LeClairRyan constituted debt collectors covered by the FDCPA, Plaintiff fails to allege facts showing a plausible violation of the Act.

Case 3:18-cv-00106-MHL-DJN   Document 28   Filed 01/07/19   Page 22 of 22 PageID# 380

that the Court also deny Plaintiff leave to amend his Complaint to include FDCPA claims against Defendants.

## CONCLUSION

For the reasons set forth above, the Court recommends that Defendants' Motion to Dismiss (ECF No. 13) be GRANTED, that Plaintiff's Complaint (ECF No. 1) be DISMISSED WITH PREJUDICE and that Plaintiff's Motions (ECF Nos. 17, 19, 20, 21, 25, 26) be DENIED.

Let the Clerk forward a copy of this Report and Recommendation to *pro se* Plaintiff at his address of record, all counsel of record and to United States District Judge M. Hannah Lauck.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

_____  /s/

David J.  Novak
United States Magistrate Judge

Richmond, Virginia
Date:  January 7, 2019.